IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| MARCIA MARSHALL, individually and on behalf of all individuals of the class similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>SAFECO INSURANCE COMPANY OF ILLINOIS and MID-CENTURY INSURANCE COMPANY,<br><br>Defendants. | CV 19-82-BLG-TJC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND** |

Plaintiff Marcia Marshall brought this putative class action in the Montana Sixth Judicial District Court, Park County, Montana against Defendants Safeco Insurance Company of Illinois ("Safeco") and Mid-Century Insurance Company ("Mid-Century"), alleging Defendants improperly reduced insurance payouts based upon Montana's collateral source reduction statute, Mont Code Ann. §§ 27-1-307; 27-1-308. (Doc. 8.) Plaintiff asserts claims for declaratory and injunctive relief, violation of Montana's Unfair Trade Practices Act, and common law bad faith. (*Id.*)

Safeco filed a Notice of Removal on July 29, 2019, invoking jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332, 1453. (Doc. 1.) Presently before the Court is Plaintiff's Motion to Remand. (Doc. 22.)

1

Safeco has filed an opposition, and Plaintiff has replied. (Docs. 34, 39.) The motion is fully briefed and ripe for the Court's review.

Having considered the parties' submissions, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand is **GRANTED**.[1]

## I. BACKGROUND

Plaintiff was injured in a motor vehicle accident in February 2010. Safeco and Mid-Century are liability insurers for the owner and the driver of the car in which Plaintiff was riding. At the time of the accident, Plaintiff was insured under an individual health insurance policy through Blue Cross Blue Shield of Texas ("Blue Cross"). As a result of Plaintiff's injuries, Blue Cross paid certain medical expenses for Plaintiff. Thereafter, Blue Cross asserted a lien and subrogation claim against any settlement proceeds paid by Defendants.

Plaintiff negotiated a settlement with Defendants prior to a trial. In executing the settlement, however, Defendants asserted a right under Montana's collateral source statute to an offset of $15,000 based on payments made by Blue Cross. The offset was ultimately exercised over Plaintiff's objection, but Plaintiff reserved any claims she had against the Defendants, including any claim based on the collateral source reduction.

---

[1] The Court finds this matter is suitable for determination on the papers. Accordingly, Safeco's Motion for Hearing (Doc. 42) is **DENIED**.

On November 25, 2013, Plaintiff filed this action in state court. (Doc. 6.) At that time, she pled her Complaint as a putative class action. (*Id.*) Before the original Complaint was served, however, Plaintiff filed a First Amended Complaint which abandoned the class claims. (Doc. 7.)

On March 29, 2018, Plaintiff's counsel sent Defendants' counsel an email indicating Plaintiff planned to seek leave to file a Second Amended Complaint reviving the class claims. Before the Second Amended Complaint was filed, Safeco removed the case to this Court on April 30, 2018. (*Marshall v. Safeco Ins. Co.*, 1:18-cv-75-SPW-TJC, Notice of Removal, Doc. No. 1 (D. Mont. April 30, 2018).) The Court remanded the case on grounds that the removal was premature because the state court had not yet ruled on Plaintiff's motion to amend, and the proposed Second Amended Complaint was not yet the operative pleading. (*Id.* at Doc. No. 34 at 11, adopted by Doc. No. 35.)

On July 1, 2019, the state court granted Plaintiff's motion to amend. (Doc. 1-4.) Plaintiff filed her Second Amended Complaint on July 11, 2019. (Doc. 8.) In her complaint, Plaintiff alleges Defendants improperly reduced insurance payouts based on Montana's collateral source reduction statute. Relevant to her class claims, Plaintiff alleges that Defendants "programmatically utilized and relied upon the collateral source statute or its principles to take a reduction against damages sustained and owed to their insureds (via first party coverages, such as

3

uninsured motorist coverage, underinsured motorist coverages and medical payments coverages) or claimants (via liability coverages)." (*Id.* at ¶ 16.)

Plaintiff defined the class as follows:

[E]ach claimant and/or insured who made a claim for damages with one or both of the Defendant(s), in which,

- Defendant(s) *have taken reduction against the damages* owed to the claimant and/or insured in payment of the claim pursuant to the collateral source statute and/or its principles, and
  - have done so before trial and a tort award, and/or
  - have done so without first conducting an investigation or inquiry into the matters set forth above in paragraph 19, and/or,

- *have taken a reduction against the damages* owed to the claimant and/or insured in payment of claims pursuant to the collateral source statute or its principles that is deemed unconstitutional.

(*Id.* at ¶ 45 (emphasis added).)

The Second Amended Complaint does not specify the number of class members or the amount of damages sought. (*Id.*)

On July 29, 2019, Safeco again removed, asserting jurisdiction under CAFA. (Doc. 1.) Safeco asserts this Court has original jurisdiction under CAFA because (1) minimal diversity is satisfied, (2) the amount in controversy exceeds $5 million and (3) the proposed class exceeds 100 members. (*Id.*) In the Notice of Removal, Safeco estimates the amount in controversy is $59,145,000, plus potential punitive damages. (*Id.*)

4

Thereafter, Plaintiff filed the instant motion to remand. (Doc. 22.) Plaintiff argues this action must be remanded because Safeco has not met its burden to show the amount in controversy exceeds $5 million. Plaintiff argues Safeco relies on unreasonable and overbroad assumptions to reach its estimate of the amount in controversy. Plaintiff further asserts the Court should not consider punitive damages or attorney fees in determining the amount in controversy. In response, Safeco argues it has reasonably estimated the amount in controversy based on the allegations in the Second Amended Complaint, and contends attorney fees and potential punitive damages may properly be considered.

## II. LEGAL STANDARDS

"Federal courts are courts of limited jurisdiction," and "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). CAFA vests federal courts with original jurisdiction over class actions where: (1) there is minimal diversity of citizenship between the parties; (2) the proposed class has at least 100 members; and (3) the amount in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. 28 U.S.C. §§ 1332(d), 1453; *Kuxhausen v. BMW Fin. Servs. NA, LLC*, 707 F.3d 1136, 1139 (9th Cir. 2013). The presumption against removal jurisdiction does not apply in cases invoking CAFA. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 554 (2014) (noting Congress intended CAFA to be

interpreted expansively).  Nevertheless, "under CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." *Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006).

Here, the parties do not dispute that the minimal diversity and numerosity requirements under CAFA are met.  The sole issue, therefore, is whether the amount in controversy exceeds the jurisdictional threshold of $5 million.

In determining the amount in controversy, the court first looks to the allegations in the complaint. *Ibarra v. Manheim Inv., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).  If the complaint does not include a specific prayer for damages, the "defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014).  If, however, the defendant's assertion of the amount in controversy is challenged, "the court decides by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 88.  "Under this system, CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Ibarra*, 775 F.3d at 1198.

The defendant is not obligated to prove the plaintiff's claim for damages; thus, the defendant may "rely on some assumptions to support removal." *Bryant v.*

*NCR Corp.*, 284 F.Supp.3d 1147, 1151 (S.D. Cal. 2018). The defendant cannot, however, meet its burden "by mere speculation and conjecture, with unreasonable assumptions." *Ibarra*, 775 F.3d at 1197. Rather, "when the defendant relies on a chain of reasoning that includes assumptions to satisfy its burden to prove by a preponderance of the evidence that the amount in controversy exceeds $5 million, the chain of reasoning and its underlying assumptions must be reasonable." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015). The parties may submit "summary-judgment-type evidence" outside the pleadings, such as affidavits or declarations, to show the amount in controversy. *Ibarra*, 775 F.3d at 1197.

## III. ANALYSIS

### A. Compensatory Damages

In the Notice of Removal, Safeco relied on two assumptions to support its claim that the amount in controversy exceeds $5 million. First, Safeco assumed the number of potential class members would total approximately 3,943. (Doc. 1 at ¶ 40.) Safeco arrived at this number based on the total number of claim files in Montana on which payments were made during the relevant time period. (*Id.* at ¶¶ 38-39.) Safeco essentially assumed a 100% violation rate, (i.e., that a collateral source offset was taken against every payment made). In its response to the motion to remand, Safeco provides an alternate estimate of the number of class

7

members. Safeco estimates that collateral source offsets may have been "considered" for 10% of third-party liability claimants and 90% of first-party UM/UIM claimants. (Doc. 34-1 at ¶¶ 8-9.) Under this alternate assumption, Safeco asserts there would be approximately 746 class members.

Second, Safeco assumed the average collateral offset amount will be $15,000 per claim. (Doc. 1 at ¶ 34.) Safeco thus presumed Plaintiff's $15,000 offset is representative of the typical offset for all claims. (*Id.* at ¶ 33-34.) Based on these assumptions, Safeco contends there is at least $11,190,000 in controversy.[2]

Plaintiff argues Safeco's assumptions are overbroad because they do not bear any relationship to the class definition. Plaintiff asserts the proposed class does not include all Montana claimants; but rather, only those claimants whose insurance payments were actually reduced pursuant to the collateral source statute. Plaintiff further argues Safeco has no evidence to support applying a uniform rate

---

[2] In the Notice of Removal, Safeco's original estimate of the amount in controversy was $59,145,000. (Doc. 1 at ¶40.) In its Opposition to the Motion to Remand, Safeco revised this estimate down to $53,355,000. (Doc. 34 at 20.) Under Safeco's alternate assumption, based on lower violation rates, it asserts the amount in controversy is $11,190,000. (*Id.*) Safeco states the amount in controversy is satisfied even if the Court only considers Safeco's *pro rata* share of the alleged damages. Safeco asserts that half of the compensatory damages would still be $5,595,000. (*Id.* at 20-21.)

8

of $15,000 per claimant. Plaintiff argues the offset amounts would differ substantially from one claimant to another.

The Court finds the assumptions underlying Safeco's estimate of the amount in controversy are not based on reasonable inferences. With regard to the number of potential class members, Safeco's estimates do not accurately reflect the class as defined in the Second Amended Complaint. Plaintiff limited the proposed class to only those claimants from whom Defendants "*have taken a reduction against the damages* owed" pursuant to the collateral source statute. (Doc. 8 at ¶ 45 (emphasis added).) Safeco initially counted *all* Montana claimants to whom payments had been made. As Plaintiff points out, however, Safeco has not shown that all claimants received collateral payments. Thus, there would not necessarily be a collateral source offset for every claim paid in Montana. Safeco's estimate of the amount in controversy is therefore overinclusive.[3]

---

[3] Safeco asserts it is entitled to rely on a 100% violation rate based on Plaintiff's allegation that the insurers "programmatically" applied the collateral source statute. A fair reading of the Second Amended Complaint, however, does not support the conclusion that every claim paid in Montana is at issue in this case. Rather, Plaintiff's proposed class definition narrows the case to only those claimants who actually had their damages reduced based on the collateral source statute. Moreover, Plaintiff's use of the term "programmatically" does not necessarily support assuming a 100% violation rate. *See Ibarra*, 775 F.3d at 1198-99 ("[A] 'pattern and practice' of doing something does not necessarily mean *always* doing something.") (emphasis in original); *Baretich v. Everett Fin. Inc.*, 2018 WL 4579857, *3 (S.D. Cal. Sept. 25, 2018) ("[A]lthough Plaintiff's allegations indicate that the violations were regular, such allegations cannot '*only*

9

Safeco's revised assumption, which uses a 10% violation rate for third-party liability claimants and a 90% violation rate for first-party UM/UIM claimants, does not cure the problem. The revised assumption is based on a carefully worded declaration that estimates the number of claims on which Safeco "considered" collateral source offsets. (Doc. 34-1 at ¶¶ 8-9.) But an estimate of how many times collateral source offsets were *considered* is not the same as estimating how many times collateral source offsets were *actually taken*. Thus, the revised assumption still fails to track the proposed class definition.

District courts in the Ninth Circuit have routinely held in insurance cases that the estimated amount in controversy must fall within the purview of the plaintiff's claims. *See e.g. Sherrill v. Progressive Nw. Ins. Co.*, 2006 WL 8435847, *2 (D. Mont. July 14, 2006) (finding the defendants overstated the amount in controversy where their calculations included UM premiums that were not at issue in the case); *Myrick v. Nationwide Mut. Ins. Co.*, 2008 WL 53183, *2 (W.D. Wash. Jan 3, 2008) (holding that where the defendant offered an "overinclusive figure" to show the amount in controversy, the defendant failed to meet its burden under CAFA because the figure did "not address the claims as pled in Plaintiff's complaint."); *McGraw v. Geico Gen. Ins. Co.*, 2015 WL 5228027, *3

---

be taken to mean that the violations were universal and at a 100% rate.'") (emphasis in original).

(W.D. Wash. Sept. 8, 2015) (holding the defendant's estimated number of proposed class members was "flawed" because the defendant did "not incorporate all of the factors that define [the plaintiff's] proposed class."). Because Safeco's assumptions do not square with the proposed class, its estimated amount in controversy is unreasonable.

Further, even if Safeco's estimate of the potential number of class members is reasonable, there is no basis for Safeco's assumption that each potential class member suffered a $15,000 underpayment. Although Plaintiff alleges Defendants took a $15,000 offset against her personal claim, Safeco has not presented any evidence to show that $15,000 is an average offset.

Safeco asserts the allegations in the Second Amended Complaint, that class members were treated "in the same manner" and that their "remedy is the same" as Plaintiff's (Doc. 8 at ¶ 46), suggest that every class member suffered the same amount of damages as Plaintiff. Safeco's reading of the complaint is patently unreasonable. The complaint merely alleges the class members were all damaged in the same way – i.e., their payments were reduced under the collateral offset statute. But the amount of the individual offsets will, by their nature, vary depending on the collateral source payments each claimant had received. Nothing in the Second Amended Complaint suggests Safeco took a $15,000 offset for every claimant.

Safeco has not offered any other basis to determine a reasonable estimate of the putative class members' average damages. Without such evidence, Safeco's damages estimate is based on "mere speculation and conjecture." *Ibarra*, 775 F.3d at 1198. The Court therefore declines to adopt Safeco's unsupported assumption that the average offset was $15,000.

Accordingly, the Court finds Safeco has failed to meet its burden to show the potential compensatory damages meet CAFA's jurisdiction threshold.

### B. Punitive Damages

Safeco asserts punitive damages should be included in the amount in controversy. Plaintiff has not pled a punitive damages claim. Nevertheless, where punitive damages are recoverable under state law, the potential for punitive damages may be considered in determining the amount in controversy, even if the plaintiff does not explicitly request punitive damages. *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001).

In this action, Plaintiff brings a claim for violation of the Montana Unfair Trade Practices Act ("UTPA"), Mont. Code Ann. § 33-18-201, et seq. (Doc. 8 at ¶¶ 38-42.) Punitive damages are available under the UTPA. Mont. Code Ann. §§ 33-18-242(4); 27-1-221. Accordingly, punitive damages may be considered in determining the amount in controversy. But "the mere possibility of a punitive damages award is insufficient to prove that the amount in controversy requirement

has been met." *Burk v. Medical Savings Ins. Co.*, 348 F.Supp.2d 1063, 1069 (D. Ariz. 2004). The defendant must come forward with evidence supporting the punitive damages claim. *Id.*; *Sherrill*, 2006 WL 8435847 at *3. "To establish probable punitive damages, [the] defendant may introduce evidence of jury verdicts in cases involving analogous facts." *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1033 (N.D. Cal. 2002).

Safeco attempts to fulfill its burden by citing three cases where punitive damages were awarded under the UTPA. *See e.g. Dees v. Am. Nat'l Fire Ins. Co.*, 861 P.2d 141 (Mont. 1993); *DeBruycker v. Guaranty Nat'l Is. Co.*, 880 P.2d 819 (Mont. 1994); *King v. Geico Indemn. Co.*, 712 Fed. Appx. 649 (9th Cir. Nov. 13, 2017). Aside from the fact these cases involved UTPA claims, however, none are factually analogous to this case. Indeed, *King* does not even provide any factual background for the Court to compare. *See King*, 712 Fed.Appx. at 650 ("Because the parties are familiar with the facts, we do not recite them here.").

"[A] court cannot consider awards issued in other actions unless a defendant identifies similarities which raise an inference that such an award might be warranted in the instant case." *Hannon v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 7146659, *3 (D. Nev. Dec. 12, 2014). As the court in *Haisch v. Allstate Ins. Co.* explained:

> It would be inherently speculative for this Court to conclude that the amount in controversy requirement can be met by simply asserting that

large punitive damage awards have been awarded in the past against insurance companies faced with allegations of fraud. . . . Defendant has failed to articulate why the particular facts that are alleged in the instant action might warrant extraordinary punitive damages.

*Haisch v. Allstate Ins. Co.*, 942 F. Supp. 1245, 1249 (D. Ariz. 1996).

Here, Safeco has not presented any facts or other evidence that would demonstrate why the facts of this case may warrant punitive damages. Accordingly, Safeco has not met its burden to show punitive damages are at issue, or will likely increase the amount in controversy to meet the jurisdictional threshold.

### C. Attorney Fees

Safeco also asserts potential attorney fees should be factored into the amount in controversy. Attorney fees may be included in the amount in controversy where an underlying statute authorizes an award of attorney fees with either mandatory or discretionary language. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998). But even assuming attorney fees are authorized by statute and can be counted as part of the amount in controversy,[4] the Court finds Safeco has failed to meet its burden to show the potential amount of attorney fees at issue in this case.

---

[4] Whether a statute authorizes attorney fees in this case is not clear. Safeco argues that Plaintiff brought her claim under the Montana Declaratory Judgment Act, Mont. Code Ann. § 27-8-201, which provides discretionary authority for an award of attorney fees. *Trustees of Indiana Univ. v. Buxbaum*, 69 P.3d 663, 674 (Mont. 2003). As Plaintiff points out, however, claims in diversity cases pled under state declaratory judgment acts are treated as arising under the federal Declaratory

The Ninth Circuit has recognized that the benchmark for attorney fees in class actions is typically 25% of the plaintiff's damages. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *Garibay v. Archstone Communities LLC*, 539 Fed. Appx. 763, 764 (9th Cir. 2013). Where the defendant's fee estimate is based on a conjectural damages calculation, however, it is insufficient to use as a basis for calculating the amount in controversy. *Armstrong v. Ruan Transp. Corp.*, 2016 WL 6267931, at *7 (C.D. Cal. Oct. 25, 2016); *Campbell v. Vitran Express, Inc.*, 2010 WL 4971944, at *4 (C.D. Cal. Aug. 16, 2010) ("[B]ecause such uncertainty surrounds Defendant's calculation of damages and penalties, the Court cannot find that the inclusion of a 25% attorneys' fee, which Defendant recommends, would necessarily place the amount in controversy over the $5,000,000 CAFA threshold.").

As discussed above, Safeco has failed to adequately establish the likely amount of compensatory damages. Thus, there is no base amount to apply the 25% benchmark. Safeco has not provided any other evidence to establish the likely amount of attorney fees.

---

Judgment Act, which does not allow an award of attorney fees. *See Hart v. PacificSource Health Plans*, 2019 WL 4044050, *2 (D. Mont. June 18, 2019); *Nat'l Merchant Ctr., Inc. v. Medianet Group Tech. Inc.*, 893 F.Supp.2d 1054 (C.D. Cal. 2012).

The Court therefore declines to include attorney fees in the amount in controversy.

**IV. CONCLUSION**

The Court finds Safeco has not offered sufficient evidence to show by a preponderance of the evidence that the amount in controversy exceeds $5 million in this case. Accordingly, **IT IS HEREBY ORDERED** that Plaintiffs' Motion to Remand (Doc. 22) is **GRANTED**.

**IT IS ORDERED**.

DATED this 18th day of February, 2020.

                                         _____
                                         TIMOTHY J. CAVAN
                                         United States Magistrate Judge